UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

KING RANGE

**CV**

                                          Plaintiff,          **ECF CASE**

           -against-

                                                             **COMPLAINT**

GS 149 LLC AND EMPIRE HOTEL GROUP,
L.L.C.

                                          Defendants.

--------------------------------------------------------------x

## COMPLAINT

    Plaintiff King Range (hereafter referred to as "plaintiff"), by counsel, Parker

Hanski LLC, as and for the Complaint in this action against defendants GS 149 LLC and

Empire Hotel Group, L.L.C. (together referred to as "defendants"), hereby alleges as

follows:

## NATURE OF THE CLAIMS

    1.        This lawsuit opposes pervasive, ongoing and inexcusable disability

discrimination by the defendants.  In this action, plaintiff seeks declaratory, injunctive

and equitable relief, as well as monetary damages and attorneys' fees, costs and expenses

to redress defendants' conspiracy to deprive plaintiff of civil rights in violation of 42

U.S.C. § 1985, Conspiracy to Interfere with Civil Rights ("42 U.S.C. § 1985") as well as

defendants' unlawful disability discrimination against plaintiff, in violation of Title III of

the Americans with Disabilities Act ("ADA") 42 U.S.C. §§ 12181 *et. seq.* and its

implementing regulations, the New York State Executive Law (the "Executive Law"), §

296, New York State Civil Rights Law, § 40, and the Administrative Code of the City

New York (the "Administrative Code"), § 8-107.  Plaintiff also alleges claims for

1

Negligence.  As explained more fully below, defendants own, lease, lease to, operate and control a place of public accommodation that violates the above-mentioned laws. Defendants are vicariously liable for the acts and omissions of their employees and agents for the conduct alleged herein.

2.     These defendants conspired and made a financial decision to ignore the explicit legal requirements for making their place of public accommodation accessible to persons with disabilities – all in the hopes that they would never be caught.  In so doing, defendants made a calculated, but unlawful, decision that disabled customers are not worthy.  The day has come for defendants to accept responsibility.  This action seeks to right that wrong via recompensing plaintiff and making defendants' place of public accommodation fully accessible so that plaintiff can finally enjoy the full and equal opportunity that defendants provide to non-disabled customers.

## JURISDICTION AND VENUE

3.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 1985, 42 U.S.C. § 12188 and 28 U.S.C. §§ 1331 and 1343 as this action involves federal questions regarding the conspiracy to and deprivation of plaintiff's rights under 42 U.S.C. § 1985 and the ADA.  The Court has supplemental jurisdiction over plaintiff's related claims arising under the New York State and City laws pursuant to 28 U.S.C. § 1367(a).

4.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because defendants' acts of conspiracy and discrimination alleged herein occurred in this district and defendants' place of public accommodation that is the subject of this action is located in this district.

**PARTIES**

5.      At all times relevant to this action, plaintiff King Range has been and remains currently a resident of the State and City of New York.

6.       At all times relevant to this action, plaintiff King Range has been and remains a wheelchair user.  Plaintiff suffers from medical conditions that inhibit walking and restrict body motion range and movement.

7.      Defendant GS 149 LLC owns the property located at 436-442 East 149th Street in Bronx County, New York (hereinafter referred to as "436-442 East 149th Street").

8.      Defendant GS 149 LLC is licensed to and does business in New York State.  Defendant Empire Hotel Group, L.L.C. is licensed to do and does business in New York State.

9.      At all relevant times, defendant Empire Hotel Group, L.L.C. operates and/or leases property located at 436-442 East 149th Street from the defendant GS 149 LLC (hereinafter referred to as the "Opera House" premises).

10.      Upon information and belief, GS 149 LLC and Empire Hotel Group, L.L.C. have a written lease and/or operating agreement.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

11.      Each of the defendants are public accommodations as they own, lease, lease to, control or operate a place of public accommodation, the Opera House premises located at 436-442 East 149th Street, within the meaning of the ADA (42 U.S.C. § 12181

and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)).

12.     The Opera House premises is a place of public accommodation within the meaning of the ADA (42 U.S.C. § 12181 and 28 C.F.R. § 36.104), the Executive Law (§ 292(9)) and the Administrative Code (§ 8-102(9)) as it is a facility operated by a private entity as a place of lodging, and its operations affect commerce.

13.     Numerous architectural barriers exist at defendants' place of public accommodation that prevent and/or restrict access to plaintiff, a person with a disability.

14.     At some time after January 1992, defendants made alterations to 436-442 East 149th Street, including areas adjacent and/or attached to 436-442 East 149th Street.

15.     At some time after January 1992, defendants made alterations to the Opera House premises, and to areas of 436-442 East 149th Street related to the Opera House premises.

16.     At some time after January 1992, defendants altered the primary function areas of the Opera House premises and 436-442 East 149th Street that relate to the Opera House premises.

17.     Since the effective date of § 27-292 of the Administrative Code (also known as "Local Law 58"), defendants have constructed and/or made alterations to the Opera House premises, and to areas of 436-442 East 149th Street related to the Opera House premises.

18.     Within the past three years of filing this action, plaintiff attempted to and desired to access the Opera House premises.

19.    The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Americans with Disabilities Act Accessibility Guidelines, 28 C.F.R. Part 36, Appendix A, and adopted by the United States Department of Justice in 1991 as the Standards for Accessible Design ("1991 Standards") or the revised final regulations implementing Title III of the ADA adopted by the United States Department of Justice in 2010 as the 2010 Standards for Accessible Design ("2010 Standards").

20.    The services, features, elements and spaces of defendants' place of public accommodation are not readily accessible to, or usable by plaintiff as required by the Administrative Code § 27-292 *et. seq.*

21.    Because of defendants' failure to and conspiracy not to comply with the above-mentioned laws, including but not limited to the 1991 Standards or the 2010 Standards and the Administrative Code, plaintiff was and has been unable to enjoy equal and complete access to defendants' place of public accommodation.

22.    Defendants' place of public accommodation has not been designed, constructed, or altered in compliance with the 1991 Standards, the 2010 Standards, the Administrative Code, or the Building Code of the City of New York ("BCCNY").

23.    Barriers to access that plaintiff encountered and/or which exist at the defendants' place of public accommodation include, but are not limited to, the barriers identified below:

I.    Defendants do not provide an accessible public entrance as the entrance has two steps.  See 28 C.F.R. § 36.304(c); and 1991 Standards §§ 4.1.1(1); 4.1.3(8), 4.32, and 4.14; and 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY §§ 1101.2, 1104.1, 1103.1.

II.   The primary entrance to defendants' public accommodation is not accessible.  See Administrative Code §§ 27-292.5(a) and 27-357(d).

III.   Defendants fail to provide an accessible route to the primary entrance from the sidewalk and/or street.  See Administrative Code § 27-292.5(b).

IV.   Defendants do not provide an accessible route from public transportation stops, accessible parking, public streets or sidewalks to the building entrance that coincides with the general circulation path used by patrons to the public accommodation thereby relegating plaintiff to a "second class citizen" entrance and exit.  See 1991 Standards §§ 4.3.2(1), 4.1.2(1), 4.1.1(1) and 4.14.1; 2010 Standards §§ 206.1, 206.2, 206.3, 206.2.4, 206.4; and BCCNY § 1104.5.

V.   At the inaccessible public entrance, defendants do not provide and display the International Symbol of Accessibility with the required information indicating the location of a designated and nearest accessible entrance.  See 1991 Standards §§ 4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and 4.30.6; 2010 Standards §§ 216.6, 703.7.2.1, 703.5; and Administrative Code § 27-292.18.

VI.   Defendants have an inaccessible public entrance and fail to provide and display the International Symbol of Accessibility at a designated accessible entrance.  See 1991 Standards §§ 4.1.2(7)(c), 4.1.6(l)(h), 4.1.3(8)(d), 4.30.1, 4.30.7, 4.30.3 and 4.30.6; 2010 Standards §§ 216.6, 703.7.2.1, 703.5; and Administrative Code § 27-292.18.

VII.   Defendants fail to provide accessible entrances in a number at least equivalent to the number of exits required by the New York Building and Fire Codes.  See 1991 Standards §§ 4.1.3(8)(a)(ii), 4.1.3(9), 4.3.10; 2010 Standards § 207.1; and Administrative Code §§ 27-354 and 27-365.

VIII.   Defendants fail to provide that at least 50% and/or 60% of all its public entrances are accessible.  See 1991 Standards § 4.1.3.8(a)(i); and 2010 Standards §§ 206.4.1, and 404.

IX.   Defendants fail to provide that an accessible route from the primary entrance to the entire interior is equivalent to the route afforded to non-disabled.  See Administrative Code § 27-292.5(b).

X.   Defendants fail to provide at least two accessible door openings leading to two independent and accessible exits from the public accommodation.  See Administrative Code §§ 27-365 and 27-366.

XI.   The property owner defendant failed to provide an accessible entrance to the tenant defendant.  See 1991 Standards § 4.1.3(a)(iii); 2010 Standards § 206.4.5, 404; Administrative Code § 27-362; and BCCNY § 1105.1.6.

XII.   Defendants fail to provide that no changes in level exist inside the required minimum maneuvering clearance at the ground space in front of the public entrance door.  See 1991 Standards§§ 4.37, 4.13.6, 4.3.8, 4.5.2; and 2010 Standards §§ 305.2, 302, 304.2, 404.2.4.4.

XIII.   Defendants fail to provide that at least one service counter is accessible.  See 1991 Standards § 7.2; 2010 Standards §§ 227.3, 227.1, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XIV.   Defendants fail to provide that at least one of function counter is accessible and dispersed throughout its premises.  See 1991 Standards §§ 7.2, 7.3(1); 2010 Standards §§ 227.3, 904; and BCCNY §§ 1109.12, 1109.12.3.

XV.   Defendants fail to provide a portion of the service counter that is no greater than 36 inches above the finish floor and no less than 36 inches in length thereby making it impossible or exceedingly difficult for the plaintiff to conduct a transaction in a manner similar to non-disabled customers.  See 1991 Standards § 7.2; 2010 Standards §§ 227.1, 227.3, 904.4; and BCCNY §§ 1109.12, 1109.12.3.

XVI.   Defendants' interior door requires more than five pounds of force to open.  See 1991 Standards § 4.1.3(7), 4.13.11; and 2010 Standards §§ 206.5.2, 404.2.9.

XVII.   Defendants' entrance has two doors in a series that lack 48 inches of clear floor space between them when opened.  See 1991 Standards § 4.13.7; and 2010 Standards § 404.2.6.

24.   Upon information and belief, a full inspection of the defendants' place of public accommodation will reveal the existence of other barriers to access.

25.   Defendants' conspiracy and failure to make their place of public accommodation accessible denies plaintiff the opportunity to participate in or benefit from services or accommodations because of disability.

26.   Defendants have not satisfied their statutory obligation to ensure that their policies, practices, procedures for persons with disabilities are compliant with the laws. Nor have defendants made or provided reasonable accommodations or modifications to persons with disabilities.

27.     Defendant GS 149 LLC has failed to ensure that its operator's/lessee's place of public accommodation and the elements therein are in compliance with the 1991 Standards or the 2010 Standards; the Administrative Code, and the BCCNY including but not limited to ensuring the maintenance of accessible features.

28.     The barriers to access within defendants' place of public accommodation continue to exist.

29.     Plaintiff frequently travels to the shopping area and neighborhood where defendants' place of public accommodation is located and patronizes places in the neighborhood.

30.     Plaintiff intends to patronize the defendants' place of public accommodation several times a year after it becomes fully accessible and compliant with the 1991 Standards or the 2010 Standards, the Administrative Code, and the relevant accessibility portions of the BCCNY.

## FIRST CAUSE OF ACTION

### (CONSPIRACY TO DEPRIVE PLAINTIFF OF CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985)

31.     Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

32.     In enacting the ADA, Congress expressly found that people with disabilities have been segregated and "subjected to a history of purposeful unequal treatment, and relegated to a position of political powerlessness in our society" and that "many of the problems faced by disabled people are not inevitable, but instead are the result of discriminatory policies based on unfounded, outmoded stereotypes and perceptions, and deeply imbedded prejudices toward people with disabilities."  See H.R.

8

REP. 101-485(III), H.R. REP. 101-485, H.R. Rep. No. 485(III), 101ST Cong., 2ND Sess. 1990, 1990 U.S.C.C.A.N. 445, 1990 WL 121680 at *447-448 (Leg.Hist.).

33.     Pursuant to their conspiracy, defendants have deprived and continue to deprive the wheelchair user plaintiff, either directly or indirectly, of the equal protection of the laws, and/or of equal privileges and immunities under the laws in violation of 42 U.S.C. § 1985(3).

34.     At all relevant times, the defendants were aware of the ADA, the Executive Law, or the Administrative Code's legal requirements relating to accessibility for wheelchair users.

35.     Upon information and belief, defendants received documents (including, but not limited to, appraisals, property condition reports and accessibility surveys) that provided actual knowledge of the accessibility requirements for their public accommodation as well as the accessibility barriers within their public accommodation.

36.     Pursuant to their conspiracy, defendants have engaged and continue to engage in conduct intended to hinder and deprive plaintiff of rights guaranteed against private impairment, including, but not limited to, the right to fully and equally enjoy defendants' public accommodation guaranteed to the plaintiff by the ADA, the Executive Law, or the Administrative Code's design, construction, and/or barrier removal requirements. See 42 U.S.C. § 12182.

37.     Defendants and their respective agents, architects, engineers, designers, contractors, equity providers, and lenders (collectively referred to as "conspirators") intentionally targeted, mistreated, and obtained unlawful profits off of, disabled wheelchair users based on unfounded, outmoded stereotypes and perceptions, and deeply

imbedded prejudices that disabled wheelchair users are indigent, politically powerless, weak, easy to victimize, and too timid to effectively enforce their civil rights.

38.     The conspirators have intentionally targeted disabled wheelchair users to unequal treatment because of stereotypical assumptions that the disabled wheelchair users have less disposable income and cannot afford to patronize the defendants' public accommodation and/or generate less revenue than non-disabled persons.

39.     The conspirators have intentionally targeted disabled wheelchair users for unequal treatment because of stereotypical assumptions that the cost of providing accessibility for disabled wheelchair users is far greater than the revenue they can receive from disabled wheelchair users, and/or from their non-wheelchair user customers if their place of public accommodation is wheelchair accessible.  In other words, that disabled wheelchair users are not worth the money as compared to non-disabled persons.

41.     The conspirators have intentionally excluded and/or denied disabled wheelchair users from all or a portion of their place of public accommodation, and subjected disabled wheelchair users to unequal treatment because of stereotypical perceptions that they take up too much floor space and require more service than non-disabled persons.

42.     The conspirators have intentionally excluded and/or denied disabled wheelchair users from all or a portion of their place of public accommodation, and subjected disabled wheelchair users to unequal treatment because they do not desire them in their place of public accommodation as customers, and do not desire non-wheelchair users to perceive them as the image of defendant's customers.  Conspirators desires stem

from deeply imbedded prejudices that cause them irrational discomfort and aversion to persons with visible disabilities.

43.     The conscious objective of the defendants and/or conspirators' enterprise has been to purposely impair plaintiff's lawfully protected rights to accessibility within defendants' public accommodation by purposely designing, constructing and maintaining their public accommodation with the intention of producing an inaccessible public accommodation.

44.     The conspirators designed, constructed, operated and have maintained a place of public accommodation that is accessible to non-disabled persons that do not require a wheelchair for mobility.

45.     In stark contrast, the conspirators designed, constructed, operated and have maintained a place of public accommodation that is not accessible to disabled persons that require a wheelchair for mobility thereby readily giving rise to the presumption that defendants intended to disfavor disabled wheelchair users.

46.     The conspirators have cured expeditiously any condition that has posed a barrier to accessibility for the non-disabled.

47.     In stark contrast, the conspirators have purposely refused and failed to maintain accessible features and/or cure the numerous conditions that pose difficult barriers to accessibility for disabled wheelchair users thereby readily giving rise to the presumption that defendants intended to disfavor disabled wheelchair users.

48.     The conspirators have engaged in objectively invidious and maliciously motivated discriminatory disparate treatment against disabled wheelchair users because of their disability.

11

49.     Pursuant to their conspiracy, defendants also have, and continue to, reap large profits from the harm they have inflicted upon plaintiff and other persons with mobility related disabilities.  These unlawful profits arise from pocketing the money that should have been used for accessibility, and from additional, but unlawful, square footage devoted to selling space instead of accessibility.

50.     The additional, unlawful, square footage gained through this conspiracy to deny people with disabilities of their civil rights, benefits Empire Hotel Group, L.L.C. as they have extra usable space. It also benefits GS 149 LLC as, upon information and belief, they receive higher rents, and/or a percentage of benefits Empire Hotel Group, L.L.C.'s sales dollars as additional rent, as a result of the unlawful excess selling space derived from violating the disability laws.

51.     These excess revenues are a direct result of denying people with mobility disabilities access to their place of public accommodation, as by so doing conspirators converted, and maintained, space required for accessibility into excess selling space, and an unlawful profit center.

52.     This conspiracy to violate plaintiff's civil rights was effectuated through, among other means, an agreement and/or tacit understanding, to select and reaffirm a course of conduct that the conspirators would design, construct, alter, maintain the defendants' public accommodation in a manner that rendered it inaccessible to persons who use wheelchairs for mobility, like plaintiff.

53.     Each of the conspirators directed, conceived, agreed to and/or approved of the unlawfully discriminatory design, construction, alteration, and maintenance of the defendants' public accommodation.

54. Among other acts, the defendants did not and do not enforce their own explicit contractual provisions (including those contained in their lease and/or operating agreement and loan documents) that require the defendants to "comply with all federal, state and local laws", including, but not limited to the ADA.

55. Upon information and belief, GS 149 LLC also approved Empire Hotel Group, L.L.C.'s design and construction plans, layouts and trade fixtures, although GS 149 LLC was aware that these plans violated the ADA because they created unlawful architectural and design barriers. GS 149 LLC purposefully ignored these prospective ADA violations, and did not require Empire Hotel Group, L.L.C. to correct their plans so that they would comply with the ADA. GS 149 LLC approved the inaccessible construction and design plans, as part of an agreement and/or tacit understanding that it itself would not, and that it also would not require Empire Hotel Group, L.L.C. to comply with the ADA.

56. Pursuant to their conspiracy, GS 149 LLC continues to approve and allow Empire Hotel Group, L.L.C. to operate their premises in an inaccessible manner; for example, by allowing Empire Hotel Group, L.L.C. to maintain architectural and design barriers, inaccessible trade fixtures and other elements in the Opera House premises.

57. Despite knowing and/or recklessly disregarding that their conduct, agreement and/or tacit understanding denies people with disabilities their civil rights to equal access and use of defendants' place of public accommodation, the defendants/conspirators have and continue to brazenly violate the law protecting persons who use wheelchairs for mobility due to reasons identified herein.

58.     The intentional and reprehensible conduct alleged herein against the class of people with disabilities who use wheelchairs for mobility were overt acts in furtherance of the conspiracy to purposely design, construct and maintain their premises in a manner that injures plaintiff's person and deprives plaintiff of equal rights and privileges of a citizen of the United States including, but not limited to, the right to fully and equally enjoy the defendants' public accommodation in the same manner as non-disabled patrons. This conspiracy must end now.

59.     As a direct and proximate result of defendants' unlawful discrimination, plaintiff has, and continues to, endure mental anguish and emotional distress, including but not limited to, humiliation, stress, anxiety, and emotional pain and suffering.

60.     Plaintiff also seeks punitive damages against the defendants because of defendants' willful and/or reckless disregard for plaintiff's rights, in an amount to be determined at trial but no less than **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS).**

### SECOND CAUSE OF ACTION
**(VIOLATIONS OF THE AMERICANS WITH DISABILITIES ACT)**

61.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

62.     Plaintiff is substantially limited in the life activity of both walking and body motion range and thus has a disability within the meaning of the ADA.  As a direct and proximate result of plaintiff's disability, plaintiff uses a wheelchair for mobility, and also has restricted use of arms and hands.

63.    The ADA imposes joint and several liability on both the property owner and lessee and operator of a public accommodation. 28 C.F.R. 36.201(b).

64.    Under the ADA, both the property owner and lessee and operator are liable to the plaintiff and neither can escape liability by transferring their obligations to the other by contract (i.e. lease or operating agreement). 28 C.F.R. 36.201(b).

65.    Defendants have and continue to subject plaintiff to disparate treatment by denying plaintiff full and equal opportunity to use their place of public accommodation all because plaintiff is disabled. Defendants' policies and practices have disparately impacted plaintiff as well.

66.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

67.    Defendants have discriminated against the plaintiff by designing and/or constructing a building, facility and place of public accommodation that is not readily accessible to and usable by the disabled plaintiff and not fully compliant with the 1991 Standards or the 2010 Standards. See 28 C.F.R. § 36.401(A)(1) and 42 U.S.C. §12183(a)(1).

68.    Defendants' place of public accommodation is not fully accessible and fails to provide an integrated and equal setting for the disabled, all in violation of 42 U.S.C. §12182(b)(1)(A) and 28 C.F.R. § 36.203.

69.    Upon making alterations to their public accommodation, defendants failed to make their place of public accommodation accessible to plaintiff to the maximum extent feasible in violation of 28 C.F.R. §§ 36.402 and 36.406.

15

70.     Upon making these alterations to the primary function areas, defendants failed to make the paths of travel to the primary function areas accessible to plaintiff, in violation of 28 C.F.R. § 36.403.

71.     Defendants failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of 28 C.F.R. § 36.304.  It would be readily achievable to make defendants' place of public accommodation fully accessible.

72.     By failing to remove the barriers to access where it is readily achievable to do so, defendants have discriminated against plaintiff on the basis of disability in violation of § 302(a) and 302(b)(2)(A)(iv) of the ADA, 42 U.S.C. § 12182(a), (b)(2)(A)(iv), and 28 C.F.R. § 36.304.

73.     In the alternative, defendants have violated the ADA by failing to provide plaintiff with reasonable alternatives to barrier removal as required by 28 C.F.R. § 36.305.

74.     Defendants' failure to remove the barriers to access constitutes a pattern and practice of disability discrimination in violation of 42 U.S.C. § 12181 *et. seq.*, and 28 C.F.R § 36.101 *et. seq.*

75.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, within the meaning of the ADA, GS 149 LLC continuously controlled, managed and operated the public sidewalk abutting 436-442 East 149th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

16

76.     GS 149 LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the ADA.

77.     Defendants have and continue to discriminate against plaintiff in violation of the ADA by maintaining and/or creating an inaccessible public accommodation.

### THIRD CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE EXECUTIVE LAW)

78.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

79.     Plaintiff suffers from various medical conditions that separately and together prevent the exercise of normal bodily functions in plaintiff; in particular, the life activities of both walking and body motion range.  Plaintiff therefore suffers from a disability within the meaning of the Executive Law § 296(21).

80.     Defendants' have and continue to subject plaintiff to disparate treatment by denying plaintiff equal opportunity to use their place of public accommodation all because plaintiff is disabled.

81.     Defendants discriminated against plaintiff in violation of New York State Executive Law § 296(2), by maintaining and/or creating an inaccessible place of public accommodation.  Each of the defendants have aided and abetted others in committing disability discrimination.

82.     Defendants have failed to make all readily achievable accommodations and modifications to remove barriers to access in violation of Executive Law § 296(2)(c)(iii).

83.     In the alternative, defendants have failed to provide plaintiff with reasonable alternatives to barrier removal as required in violation of Executive Law § 296(2)(c)(iv).

84.     It would be readily achievable to make defendants' place of public accommodation fully accessible.

85.     It would not impose an undue hardship or undue burden on defendants to make their place of public accommodation fully accessible.

86.     As a direct and proximate result of defendants' unlawful discrimination in violation of New York State Executive Law, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, embarrassment, stress, and anxiety.

87.     Plaintiff has suffered damages in the amount of at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

### FOURTH CAUSE OF ACTION
### (VIOLATIONS OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK)

88.     Plaintiff realleges and incorporates by reference all allegations set forth in this Complaint as if fully set forth herein.

89.     Plaintiff suffers from various medical conditions that separately and together, impair plaintiff's bodily systems - in particular, the life activity of both walking and body motion range -and thus plaintiff has a disability within the meaning of the Administrative Code § 8-102(16).

90.     The Local Civil Rights Restoration Act of 2005 (the "Restoration Act"), also known as Local Law 85, clarified the scope of the Administrative Code in relation to the New York City's Human Rights Law.  The Restoration Act confirmed the legislative intent to abolish "parallelism" between the Administrative Code and the Federal and New York State anti-discrimination laws by stating as follows:

> The provisions of this title shall be *construed liberally* for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York State civil and human rights laws, including those laws with provisions comparably-worded to provisions of this title, have been so construed.

Restoration Act § 7 amending Administrative Code §8-130 (emphasis added). The Restoration Act is to be construed broadly in favor of plaintiff to the fullest extent possible.

91.     Defendants' have and continue to subject plaintiff to disparate treatment and disparate impact by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their place of public accommodation all because of disability in violation of the Administrative Code § 8-107(4).  Each of the defendants have aided and abetted others in committing disability discrimination.

92.     Defendants have discriminated, and continue to discriminate, against plaintiff in violation of the Administrative Code § 8-107(5)(b) by designing, creating and/or maintaining an inaccessible commercial facility/space.

93.     Defendants have subjected, and continue to subject, plaintiff to disparate treatment by directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space all because of disability in violation of the Administrative Code § 8-107(5)(b).

94.     In violation of Administrative Code § 8-107(6), defendants have and continue to, aid and abet, incite, compel or coerce each other in each of the other defendants' attempts to, and in their acts of directly and indirectly refusing, withholding, and denying the accommodations, advantages, facilities, and privileges of their commercial facility/space and the place of public accommodation therein, all because of disability, as well as other acts in violation of the Administrative Code.

95.     Administrative Code §§ 19-152 and 7-210 impose a non-delegable duty on the property owner to repave, reconstruct, repair, and maintain its abutting public sidewalk.  As a result, GS 149 LLC continuously controlled, managed and operated the public sidewalk abutting 436-442 East 149th Street, which includes the portion of the sidewalk constituting the entrance to defendants' place of public accommodation.

96.     GS 149 LLC's failure to construct and maintain an accessible entrance from the public sidewalk to defendants' place of public accommodation constitutes disability discrimination in a violation of the Administrative Code.

97.     Defendants discriminated against plaintiff in violation of the Administrative Code, § 8-107(4), and Local Law 58 by maintaining and/or creating an inaccessible public accommodation.

98.     As a direct and proximate result of defendants' unlawful discrimination in violation of the Administrative Code, plaintiff has suffered, and continues to suffer emotional distress, including but not limited to humiliation, stress, embarrassment, and anxiety.

99.    Defendants' long-standing refusal to make their place of public accommodation fully accessible was deliberate, calculated, egregious, and undertaken with reckless disregard to plaintiff's rights under the Administrative Code.

100.    By failing to comply with the law in effect for decades, defendants have articulated to disabled persons such as the plaintiff that they are not welcome, objectionable and not desired as patrons of their public accommodation.

101.    Defendants' unlawful discriminatory conduct constitutes malicious, willful and wanton violations of the Administrative Code for which plaintiff is entitled to an award of punitive damages.  Administrative Code § 8-502.

102.    By refusing to make their place of public accommodation accessible, defendants have unlawfully profited from their discriminatory conduct by collecting revenue from a non-compliant space and pocketing the money that they should have lawfully expended to pay for a fully compliant and accessible space.  Defendants' unlawful profits plus interest must be disgorged.

103.    Plaintiff has suffered damages in the amount of at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) from each defendant and the total amount shall be determined at trial.

## FIFTH CAUSE OF ACTION
### (VIOLATIONS OF THE NEW YORK STATE CIVIL RIGHTS LAW)

104.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

105.    Defendants discriminated against plaintiff pursuant to New York State Executive Law.

106.    Consequently, plaintiff is entitled to recover the penalty prescribed by Civil Rights Law §§ 40-c and 40-d, in the amount of **$500.00 (Five Hundred Dollars)** per defendant for each and every barrier and violation.

107.    Notice of the defendants' violations and this action has been served upon the Attorney General as required by Civil Rights Law § 40-d.

### SIXTH CAUSE OF ACTION
### (COMMON LAW NEGLIGENCE)

108.    Plaintiff realleges and incorporates by reference all allegations set in this Complaint as if fully set forth herein.

109.    Defendants negligently designed, constructed, operated, repaired and maintained their place of public accommodation located at 436-442 East 149th Street in a manner that has rendered their place of public accommodation inaccessible to the disabled plaintiff.

110.     At all relevant times, defendants have had a duty to design, construct, operate, repair, and maintain their place of public accommodation located at 436-442 East 149th Street in a manner that is accessible to the disabled plaintiff, including a duty to comply with the Administrative Code.

111.    Defendants breached their duty by negligently designing, constructing, operating, repairing and maintaining their place of public accommodation located at 436-442 East 149th Street in a manner that has rendered it inaccessible to the disabled plaintiff, and by violating the Administrative Code sections cited herein.

112.    Defendants' failure to design, construct, operate, repair and maintain their place of public accommodation located at 436-442 East 149th Street in a manner that is

accessible to the disabled plaintiff has proximately caused plaintiff to be unable to enjoy full and equal access to defendants' place of public accommodation.

113.    Defendants have had actual and constructive notice that their place of public accommodation located at 436-442 East 149th Street is not accessible to the disabled.  The inaccessibility of defendants' place of public accommodation is visible, open, obvious, and apparent and has existed for a sufficient length of time for the defendants to discover and remedy the numerous inaccessibility conditions.

114.    As a direct result of defendants' negligence, plaintiff has suffered and continues to suffer damages in an amount to be determined at trial.

## INJUNCTIVE RELIEF

115.    Plaintiff will continue to experience unlawful discrimination as a result of defendants' failure to comply with the above-mentioned laws.  Therefore, injunctive relief is necessary to order defendants to alter and modify their place of public accommodation and their operations, policies, practices and procedures.

116.    Injunctive relief is also necessary to make defendants' facilities readily accessible to and usable by plaintiff in accordance with the above-mentioned laws.

117.    Injunctive relief is further necessary to order defendants to provide auxiliary aids or services, modification of their policies, and/or provision of alternative methods, in accordance with the ADA, Executive Law and the Administrative Code.

## DECLARATORY RELIEF

118.    Plaintiff is entitled to a declaratory judgment concerning each of the accessibility violations committed by defendants against plaintiff and as to required

alterations and modifications to defendants' place of public accommodation, facilities, goods and services, and to defendants' policies, practices, and procedures.

## ATTORNEYS' FEES, EXPENSES AND COSTS

119.    In order to enforce plaintiff's rights against the defendants, plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to 42 U.S.C. § 1985, the ADA and the Administrative Code.  42 U.S.C. § 1988; 42 U.S.C. §12205; 28 C.F.R. §36.505; and Administrative Code § 8-502.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully requests that the Court enter a judgment against the defendants, jointly and severally, in favor of plaintiff that contains the following relief:

A. Enter declaratory judgment declaring that defendants' have violated 42 U.S.C. § 1985, the ADA and its implementing regulations, Executive Law and Administrative Code and declaring the rights of plaintiff as to defendants' place of public accommodation, and defendants' policies, practices and procedures;

B. Issue a permanent injunction ordering **defendants to close and cease all business** until defendants remove all violations of the ADA, the 1991 Standards or the 2010 Standards, Executive Law and Administrative Code, including but not limited to the violations set forth above;

C. Retain jurisdiction over the defendants until the Court is satisfied that the defendants' unlawful practices, acts and omissions no longer exist and will not reoccur;

D. Find defendants guilty of a class A misdemeanor for violating New York State Civil Rights Law pursuant to New York State Civil Rights Law § 40-d;

E. Award at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) to plaintiff as Compensatory damages, per defendant, plus pre-judgment interest, as a result of defendants' violations of 42 U.S.C. § 1985, New York State Executive Law and the Administrative Code of the City of New York;

F. Award at least **$100,000.00 (ONE HUNDRED THOUSAND DOLLARS**) to plaintiff as Punitive damages, per defendant, in order to punish and deter the defendants for their violations of 42 U.S.C. § 1985 and the Administrative Code of the City of New York;

G. Award plaintiff **$500.00 (FIVE HUNDRED DOLLARS**) for each and every barrier and violation of the law, per defendant, pursuant to New York State Civil Rights Law §§ 40-c and 40-d;

H. Award reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1985 and the Administrative Code;

I. Find that plaintiff is a prevailing party in this litigation and award reasonable attorneys' fees, costs and expenses pursuant to 42 U.S.C. § 1985 and the ADA; and

J. For such other and further relief, at law or in equity, to which plaintiff may be justly entitled.

Dated: April 7, 2014
      New York, New York

                                Respectfully submitted,

                                **PARKER HANSKI LLC**

                                By:____/s_____
                                        Glen H. Parker, Esq.
                                        Adam S. Hanski, Esq.
                                        Attorneys for Plaintiff
                                        40 Worth Street, 10th Floor
                                        New York, New York 10013

Telephone: (212) 248-7400
Facsimile: (212) 248-5600
Email:ash@parkerhanski.com
Email:ghp@parkerhanski.com